JAMES F. CLANCY

*v.*

JOHN J. FLUSKY *et al.*

*Opinion filed October 19, 1900—Rehearing denied December 7, 1900.*

SPECIFIC PERFORMANCE—*when equity will enforce parol promise to convey farm.* A parol promise by a father to give a farm to his son if the latter would move upon and cultivate it and furnish a home for the father will be enforced by court of equity where the terms of the contract and compliance therewith by the son are proved, even though the father, without justifiable cause, left the home provided for him after several years, and conveyed the farm, without actual consideration, to one who had notice of the son's open possession under claim of ownership.

MAGRUDER, J., dissenting.

WRIT OF ERROR to the Circuit Court of McHenry county; the Hon. CHARLES E. FULLER, Judge, presiding.

BASTRUP & O'NEILL, for plaintiff in error.

JAMES F. CASEY, D. T. SMILEY, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In November, 1891, John Flusky commenced an action of forcible detainer against the defendant in error, John J. Flusky, to recover possession of a farm of two hundred and ninety-two acres in McHenry county. There was a judgment against John J. Flusky before the justice of the peace, and he appealed the cause to the circuit court. On July 25, 1892, said John J. Flusky filed his bill in said circuit court against said John Flusky and the plaintiff in error, James F. Clancy, to enjoin the action of forcible detainer and for a specific performance of an alleged oral contract for the conveyance to him of said farm. Complainant alleged that the defendant John Flusky was his father; that in September, 1887, said John Flusky agreed that if complainant would rent his own

farm and move upon the farm in question and cultivate and improve the same, and furnish a home to his said father as long as he should desire such home, he would convey the land to complainant; that complainant accepted said agreement and proposal, took possession, made improvements and performed the contract on his part; that said John Flusky resided with complainant, and he furnished him with board, lodging and care, until October, 1891, when he left complainant's home without cause, and that on July 29, 1892, said John Flusky made a conveyance of the land to James F. Clancy for the pretended consideration of $10,000, while complainant was in open possession of the premises as owner of the same. John Flusky answered, denying that he was the father of complainant and denying the contract and making of improvements, and alleged that complainant moved upon the premises to assist in improving and tilling the same at complainant's own suggestion, for which he was to pay complainant a reasonable compensation, either in a share of the crops or otherwise; that he resided with complainant until he was compelled to leave on account of his treatment, and that he had conveyed the premises to the defendant Clancy for a good and valuable consideration. Clancy in his answer also denied the making of the contract and the making of improvements by the complainant, and alleged that he had paid $10,000 for the property. Both answers set up the Statute of Frauds as a defense to the alleged oral contract. Replications were filed to the answers, and the cause was referred to a special master in chancery. The defendant John Flusky died in December, 1894, after a part of the testimony was taken. On October 25, 1897, defendant Clancy filed his cross-bill, alleging that his co-defendant, John Flusky, was dead, and that, not being a party to the forcible detainer suit, he could not obtain affirmative relief except by cross-bill. He prayed for a writ of restitution of the premises as grantee of John Flusky. John J. Flusky

answered the cross-bill, and a replication to the answer was filed. A special master reported in favor of complainant, finding that complainant was the legitimate son and only heir of John Flusky; that the contract was made and that complainant performed his part of it, except so far as prevented by John Flusky leaving his home without any reasonable cause. He recommended a decree setting aside the deed to the defendant Clancy as a cloud upon the title of complainant, and granting the relief prayed for in the original bill. The cause was heard on exceptions to the report. The first exception was that the master erred in finding that the complainant was the legitimate son of John Flusky, but this exception was afterward withdrawn, so that the finding of that fact cannot be questioned and is not open to further investigation. The court overruled the remaining exceptions, confirmed the report and entered a decree dismissing the cross-bill of Clancy and declaring complainant, John J. Flusky, the owner in fee simple of the premises.

On the question whether the alleged contract was made, the direct evidence consisted of the testimony of complainant and his daughter that it was made, and of the defendant John Flusky denying it and testifying that complainant moved upon the farm without any agreement of any sort. There was some evidence of admissions by the complainant that he went on the farm without any agreement, and these alleged admissions he denied. It was proved that after the complainant moved on the place the defendant John Flusky frequently said to different persons that the place and everything there belonged to complainant and that he had given the farm to him. Considering all the evidence and the attendant circumstances, we conclude that the facts established by the proofs are as follows: In September, 1887, John Flusky owned the farm in question and was living on it. He was eighty-seven years old. His wife was dead and he had no family. Mary Jane Flusky, a daughter of the

complainant, was keeping house for him. The farm was not in good condition, was unfenced and overrun with burrs and Canada thistles. At that time John Flusky proposed to complainant, who was living upon his own farm eight miles distant, that if he would move upon this farm and take possession of it and cultivate and improve it, and furnish said John Flusky a home with him, he would give complainant the farm. Complainant considered the proposition for about a week, when he accepted it and rented his own farm and moved on these premises in pursuance of the arrangement. He built necessary wire fences, did some ditching and put in tile, and put in a hydraulic ram to furnish water for the stock. He got the farm into a better state of cultivation and reduced the number of burrs and thistles upon it. He paid most of the taxes after he took possession. About the time complainant went on the farm John Flusky built a house upon it at a cost of about $1500 and a barn that was worth perhaps $3000. The parties lived together in the house and complainant furnished John Flusky a home and cared for him for about four years, until October, 1891, when he left without any justifiable reason. The parties were perhaps both inclined to be somewhat quarrelsome and they had minor troubles about various things, but there was no sufficient cause for leaving the place. After leaving the farm and bringing the suit in forcible detainer John Flusky made the conveyance to Clancy without any consideration. The improvements made by the complainant were not extensive, and the improved cultivation of the farm was only the result of good husbandry, but no great improvements were required. The father was in good circumstances and built the house and barn and was otherwise liberal with complainant, and among other things paid a mortgage of complainant amounting to $2154.40. Complainant was in the open and visible possession of the premises, and Clancy had notice of his claims when he took the title.

In a suit for specific performance of an alleged contract to convey lands, such contract must be shown and its material terms must be proved. (*Wright* v. *Raftree*, 181 Ill. 464.) When the alleged contract is oral and the Statute of Frauds is pleaded, there must have been such performance as will take the contract out of the prohibition of such statute; but when a contract is proved, and it is founded upon a good and valuable consideration and has been performed by one party, a court of equity will decree its specific performance at the suit of such party. The complainant must show that he has done, and is ready and willing to do, all the things that are required of him by the agreement according to its terms; but if that is the case, he is entitled to have the other party perform his part of it. The contract in this case is not objectionable to the rules of equity, and the only question seems to be whether there was such performance by complainant that the Statute of Frauds will not bar the remedy. It has been repeatedly held that where a father gives land by parol to his son, and the son takes actual possession of the land under the agreement and in reliance upon it and performs his part of such agreement, a court of equity will enforce the promise. (*Kurtz* v. *Hibner*, 55 Ill. 514; *Langston* v. *Bates*, 84 id. 524; *Bohanan* v. *Bohanan*, 96 id. 591; *McDowell* v. *Lucas*, 97 id. 489; *Irwin* v. *Dyke*, 114 id. 302.) The circumstances of cases differ greatly, but we think this case comes fairly within the rule stated in these decisions, and that the court did not err in enforcing the contract.

Some objections are made to the procedure and the decree, but having disposed of the substantial merits of the controversy we do not regard such other objections of any importance, and the decree will be affirmed.

The decree of the circuit court is affirmed accordingly.

*Decree affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.