RYAN v. LOFTON et ux. (No. 8447.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 21, 1916. On Motion for Rehearing, Nov. 25, 1916.)

1. FRAUDS, STATUTE OF ☞129(7)—ORAL CONTRACT—IMPROVEMENTS.

Improvements, consisting of piping a house for gas, the value not shown, and the purchasing of wall paper amounting to $2.10, not paid at the time of trial, were so insignificant as not to take the conveyance as to which an oral contract was sought to be enforced, out of the statute of frauds (Vernon's Sayles' Ann. Civ. St. 1914, art. 3965, subd. 4); the property being worth $700, with a rental value of $10 per month.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 322; Dec. Dig. ☞129(7).]

2. FRAUDS, STATUTE OF ☞129(9)—ORAL CONTRACT—IMPROVEMENTS.

Where, to enforce oral contract to convey, reliance is had upon the claimant's possession and improvement of the premises, the value of the improvements must be shown to be such proportion of the value of the property and made in such reliance upon the contract as to give the claimant equitable rights.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 322; Dec. Dig. ☞129(9).]

On Motion for Rehearing.

3. TRESPASS TO TRY TITLE ☞41(1)—ACTION—EVIDENCE.

In suit for trespass to try title, the defense being equitable rights under an oral contract to convey, evidence *held* to show that plaintiff's grantor, an aged man, promised when title was taken in his own name to convey the property to defendants in consideration of support until his death, which was given him.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 62; Dec. Dig. ☞41(1).]

4. TRESPASS TO TRY TITLE ☞35(1) — DEFENSES.

In trespass to try title, defendants are entitled to give in evidence any lawful defense to the action, except the defense of limitation, without any special pleading as a predicate therefor.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50, 52; Dec. Dig. ☞35(1).]

5. TRUSTS ☞17, 18(5)—ORAL AGREEMENT TO CONVEY.

Where legal title is taken in the name of the purchaser with the understanding that in fact the equitable title shall vest in persons promising to support the purchaser until his death, such parol agreement, when executed, constitutes a valid enforceable trust, authorizing a decree of the purchaser's interest to such persons as against a purchaser of the legal title with notice, notwithstanding statute of frauds (Vernon's Sayles' Ann. Civ. St. 1914, art. 3965, subd. 4).

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 20; Dec. Dig. ☞17, 18(5).]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Action by William C. Ryan against R. L. Lofton and wife. From judgment for defendants, plaintiff appeals. Affirmed.

R. W. Haynie, of Abilene, for appellant. Ben L. Cox, of Abilene, for appellees.

BUCK, J. This is an action arising in trespass to try title, William C. Ryan, appellant, claiming title to the property in controversy by legal transfers, and R. L. Lofton and wife claiming title to the property by virtue of a parol gift from M. P. Moore. By agreement between all parties W. E. Dennis and wife were agreed upon as the common source of title; said Dennis and wife being the immediate grantors in the conveyance to M. P. Moore. From a judgment in favor of the defendants, plaintiff appeals.

In August, 1913, R. L. Lofton and his wife, Mrs. Eula Lofton, lived in Abilene, Tex. M. P. Moore purchased from Dennis the premises in controversy, and the Loftons and he moved thereon, and all occupied the house until the day before Moore's death, which occurred in May, 1914. Moore was quite old, and had lived with the Loftons for some years in Cisco prior to their removal to Abilene, Moore furnishing the house rent free, and the Loftons nursing, caring for, and boarding Moore. During a goodly portion of the time they lived together in Abilene Mr. Moore was sick and bedfast and required considerable attention. The day before he died he was moved from the Lofton residence, at the instance of the appellant herein, and apparently over the protest of the Loftons. A few days before his death Moore executed a deed to the property in question in favor of the Right Reverend Joseph Patrick Lynch, D. D., bishop of the Catholic diocese of Dallas, Tex., and his successors and assigns, reciting a consideration of $750. Subsequent to Moore's death, on, to wit, July 21, 1914, Rev. Lynch deeded the property to William C. Ryan, appellant, the consideration recited being "ten dollars and other valuable consideration."

On August 11, 1915, appellant filed suit in form of trespass to try title. Defendants answered by a plea of not guilty, and further alleged that they had acquired the title from M. P. Moore under the following circumstances, to wit: That, while the title was taken by said M. P. Moore in his own name, the same was taken for the use and benefit of the defendants and with an equitable title in these defendants; that the said M. P. Moore had been for several years prior to the date of said deed an old and decrepit man, without a family and without relatives upon whom to rely for support and maintenance; that for five years prior to the date of said deed the defendants had taken care of said Moore and had boarded him and had permitted him to room with them and had cared for him during sickness, with no remuneration therefor save and except the promise of said Moore at his death to remunerate them by leaving them what property he owned at said time; that at the time of the purchase of the property by Moore from Dennis said Moore placed defendants in possession there-

of, and agreed with and promised them that at his death the title to said premises should vest in the defendants, and the property should become theirs without any incumbrance or other charge thereon, with the sole condition that defendants would take care of, support, maintain, and nurse said Moore from said date of the deed during the rest of his natural life, it being understood that said premises were to become the property of the defendants at the death of said Moore in consideration of and in payment for the services of defendants in taking care of said Moore for the five years prior to the date of said deed and for the time intervening from the date of said deed to the death of said Moore; that defendants faithfully carried out their part of said agreement and did take care of and support and nurse the said Moore during the rest of his natural life and until his death in May, 1914.

Defendants alleged in another count that the value of said property was $700, and that the value of their services to the said Moore during the time they nursed and cared for him, alleged to have covered a period of some five years previous to the date of said deed and the time subsequent thereto, was of the reasonable value of $75 per month. They further alleged that while relying upon the contract and agreement alleged to have been had with said Moore prior to his death, and while in possession and control of said premises, they made valuable improvements thereon.

The court having sustained plaintiff's exception to that portion of defendants' answer setting up the promise and agreement of M. P. Moore to give the defendants the property in controversy at his death, defendants amended their answer and alleged that the agreement of said Moore and the understanding of said defendants were that the property in fact vested in said defendants at the time of the execution of the deed from Dennis to Moore, and further pleaded fulfillment of the agreement on the part of the defendants to nurse and care for said Moore, and the making of valuable and permanent improvements, etc.

The issues were sharply drawn by the evidence: First, as to the nature of the agreement or contract, if any, between Moore and the Loftons; second, as to whether any permanent or valuable improvements had been made; third, as to whether defendants had complied with the terms of the alleged contract with Moore in taking care of him during his last days.

The cause was submitted to the jury on the following special issue, to wit:

"Q. 1. At the time M. P. Moore purchased the property in controversy from W. E. Dennis and the defendant Mrs. Lofton began occupying the same did the late M. P. Moore then give such property to the said Mrs. Lofton, or did he merely promise to give the same to her at his death, or did he let Mrs. Lofton enter such property upon the understanding that she should take care of him for the rent of such property?"

To this the jury answered as follows:

"We find that the property was given to the defendant Mrs. Lofton by M. P. Moore the day M. P. Moore bought the property."

Upon this verdict the court entered a judgment in favor of the defendants on their plea of not guilty, and further decreed that all the right, title, claim, and interest of William C. Ryan in said property should be divested out of him and vested in the defendants, and that the cloud cast upon the title by virtue of the execution, delivery, and recording of the deed from Moore to Rev. Lynch, and the deed from Lynch to plaintiff, be removed, and that defendants be in all respects quieted in their title. From this judgment the plaintiff has appealed.

The trial court in sustaining plaintiff's special exception to that part of defendants' answer pleading an agreement and promise on the part of the deceased M. P. Moore to give, at his death, the property in controversy to defendants as a remuneration for their taking care of him during his lifetime, seems to have concluded that such an agreement is not sustainable, but that in order to make the parol agreement of transfer of title to real estate valid there must be: First, a promise on the part of the grantor to convey to the grantee in præsenti; and, second, the entering into possession by the grantee under said promise; and, third, the making of valuable and permanent improvements on the part of the grantee and in the reliance on the grantor's promise. While a parol sale or gift of land may be sustained in equity when it is followed by the possession of the grantee or donee who makes valuable improvements thereon in good faith (Wootters v. Hale, 83 Tex. 563, 19 S. W. 134), yet it does not follow that the validity of such sale or gift may not be sustained in the absence of valuable and permanent improvements.

"A contract to devise land, though looked upon with some disfavor as a nontestamentary method of disposition of property at death, and consequently not subject to the statute of wills, will yet be in effect enforced by equity when the contract is clear, definite, and without doubt. It is obvious that equity cannot compel direct specific performance of the contract to devise land by ordering the promisor to make the devise before his death, as performance is not due until the time of death. But equity will do what is equivalent to giving specific performance, by fastening a trust upon the land in the heir or devisee, and enforcing conveyance by the representative holding the legal title in favor of the purchaser under the contract to devise. Before the death of the promisor equity will enjoin any attempted conveyance of the land to a third party as a fraud upon the promise of the contract to devise; or, if it has been conveyed to a grantee with notice or without consideration, equity will compel the land either to be held in trust for the devisee purchaser or to be reconveyed to the grantor." 6 Pomeroy, Eq. Jur. § 746.

See, also, Davies et al. v. Cheadle et al., 31 Wash. 168, 71 Pac. 728; Harrison v. Harrison, 80 Neb. 103, 113 N. W. 1042; Burns v.

Smith, 21 Mont. 251, 53 Pac. 742, 69 Am. St. Rep. 653; Bryson v. McShane, 48 W. Va. 126, 35 S. E. 848, 49 L. R. A. 527; note under Krell v. Codman (Mass.) 14 L. R. A. 860; Grindling v. Rehyl, 149 Mich. 641, 113 N. W. 290, 15 L. R. A. (N. S.) 466; Teske v. Dittberner, 70 Neb. 544, 98 N. W. 57, 113 Am. St. Rep. 802; Clancy v. Flusky, 187 Ill. 605, 58 N. E. 594, 52 L. R. A. 277; Burdine v. Burdine, 98 Va. 515, 36 S. E. 992, 81 Am. St. Rep. 741; Kent v. Kent, 62 N. Y. 560, 20 Am. Rep. 502; Updike v. Ten Broeck, 32 N. J. Law, 105; Young v. Young, 45 N. J. Eq. 27, 16 Atl. 921; Masterson v. Harris, 174 S. W. 570; Clark v. West, 96 Tex. 437, 73 S. W. 797; Jordan v. Abney, 97 Tex. 296, 78 S. W. 486. All of these cases are authority to the effect that a valid contract binding one of the parties to leave, at his death, property to another, is enforceable where the other party has fulfilled the terms of his agreement.

[1, 2] While we are of the opinion that the judgment rendered cannot be sustained on the basis of valuable and permanent improvements made prior to M. P. Moore's death, yet we think the evidence is sufficient to enforce specific performance on the part of appellant, who is shown to be the holder of the legal title and to have received the same with notice of defendants' claim and without valuable consideration. The only improvements shown to have been made by the defendants was the piping for gas, the value thereof not shown, and the purchase of wall paper amounting to $2.10, not paid for at the time of the trial. It is agreed the property in controversy is of the value of $700, and that the rental value of the same was $10 per month. At most, these items would be insignificant in value, and not such as to take the conveyance out of the statute of frauds. Wallis v. Turner, 95 S. W. 61; Hutcheson v. Chandler, 47 Tex. Civ. App. 124, 104 S. W. 434; Eason v. Eason, 61 Tex. 225; Ann Berta Lodge v. Leverton, 42 Tex. 18. As stated in the last-cited case:

"Nor can it be maintained that any character of improvements or repairs made on the premises, of however little value, will entitle the purchaser to have the contract enforced."

As reliance is placed on the grantor's putting the grantee into possession of the premises and the making of improvements, the value of such improvements must be shown to be in such amount in proportion to the value of the property, and made in reliance upon the promise to convey, as would vest in the claimant-grantee equitable rights, to deprive him of which would constitute a fraud, the perpetration of which the statutes of frauds were enacted to prevent. But whether the parol gift of conveyance be intended to take place at the time the donee or grantee is placed in possession, or to take place at the death of the donor or grantor, is immaterial. If the donee or grantee has, at the death of the donor or grantor, performed the services which constituted the consideration for the conveyance, equity will enforce such conveyance. As is said in Jordan v. Abney, supra:

"That a contract between two persons upon valuable consideration that one will, at his death, leave property to the other, is enforceable, where no statute is contravened, is held by an almost unbroken current of authority, English and American. Such contracts, when sufficiently certain, have been held valid and enforceable, in equity as well as at law, whether they provide for the payment of money, or the leaving of specific property, or of all or a moiety of that which the obligor should leave at his death. They have usually been put in the form of agreements to bequeath by will, but this has not been regarded as an essential feature; agreements to leave the property, or that the obligee should have it at the death of the obligor, being held sufficient."

We think the evidence sufficient to support the contention of defendants: (1) That M. P. Moore at the time he purchased the premises in controversy intended either to give them to the defendants at that time or that the defendants should receive them at his death; (2) that the consideration for this agreement was the care and nursing and boarding of the deceased by the defendants; (3) that defendants complied with their agreement to take care of the deceased during the remainder of his natural life. Upon the first and second propositions Mrs. Lofton testified as follows:

"He [Mr. Moore] told me that he would buy a home for me to take care of him, that he was alone, and that he could not stay down there by himself. I agreed to that. Mr. Dudley [the real estate agent] was taking us to look at a place down here on Oak street and we passed by this place, and Mr. Dudley told me there was a place he had for sale, and he said, 'We will look at it.' He told Mr. Moore that. I was with him at the time. We were all together in the buggy. Mr. Dudley was taking us to look at the place, and we all got out and went in. We could not get in the house. The lady was gone, and we looked around all we could, you know, and he [Mr. Moore] told me that the place suited him if it did me. He said I was the one to be satisfied; it was for me that he was buying it for, and I was the one to be pleased about it. And so we didn't go any further. We decided we would take that place. * * * In consideration of Mr. Moore giving me this place, I agreed to take care of him as long as he lived. There was no other consideration. I had taken care of him some prior to that time. We had lived with him at Cisco, prior to the time he came down here and bought this place. He told me that he was giving me this place for my kindness to him at Cisco and for in the future taking care of him. During all the time that he lived with us, and I took care of him, he did not pay me board. He did not pay me anything. * * * He told me that he had bought the place for me. He did not say anything about the place being his until he died. He told me that the place was mine when he bought it. He just says, 'It is yours, the place is yours,' when he bought the place, and he set out shade trees there and everything, and told me he was putting them out for me, they were mine, and to watch them, and he didn't claim to own them. He gave me the property at the time he bought it. He told me when he bought it that it was mine."

Mr. Miller testified for the defendants in part as follows:

"During the summer of 1913 I had a conversation with him [Moore] about buying some property in Abilene. At the time referred to Mr. Lofton was renting property from me, and I didn't know anything about Mr. Moore at the time. But Mr. Moore told me that he wanted to buy some' property and he wanted to see some property, and I asked him, 'What kind of property?' and he said, 'Some residence property,' and I carried him and Mrs. Lofton, and I believe it was a little child, in the buggy or carriage around and looked at some property, and the old gentleman was almost helpless at the time, and we went down there and looked at two or three pieces of property. He says, 'I want to buy a residence for Mrs. Lofton.' He says, 'I am not able to take care of myself, and she has been caring for me, and I want to buy her a home.' * * * I didn't show her this place that afterwards he bought, but he remarked that 'I want to buy Mrs. Lofton a home'; that 'she has cared for me, and I am almost helpless.' "

C. W. Dudley testified in part:

"I am the agent that sold the property in controversy in this case. They lived across the street from me, and I saw the old gentleman there, and I got to talking with him one day, and he said he was in the market to buy a home in Abilene. * * * I showed him that particular property—him and Mrs. Lofton. So they looked through the house. I carried them down there, and there was not any one at home, and we couldn't get inside; so the next day or two I showed them this property. We went through it. We was out in the yard looking around in the yard, and he asked Mrs. Lofton how she liked the property, and she said, 'All right,' and he says, 'I want you to be pleased; I am buying this property for you.' "

W. M. Robinson testified in part:

"I knew Mr. Moore that lived with the Loftons. I talked to him just before the Loftons moved into that house. It must have been a week or two before they moved in, and I was cutting off some gas, and I says, 'Mr. Moore, let me wire the house.' 'No,' he says, 'I am not able right now.' He says, 'You should be as good as I was; I bought the property and gave it to Bob's wife;' and he says, 'You ought to be as good as I was.' "

As to the compliance on the part of the Loftons with the agreement to take care of Mr. Moore, Mrs. Lofton testified in part as follows:

"During all the time that he lived with us I took care of him, and he did not pay me board. He did not pay me anything. During the last few months that he lived here in Abilene he was down in bed all the time. He was helpless. I certainly did wait on him. It took most all of my time and attention for him. He was a big care. I had Dr. Haynes with him. I carried out my agreement with him and kept him there the rest of his life. * * * I took care of Mr. Moore at Cisco about six years. We went there in 1901, and stayed there six years. I never did make Mr. Moore any charge for taking care of him in Cisco. I never did charge him anything for my services. * * * I stated that I took good care of Mr. Moore. I certainly did. I sure did, as well as I could. It is a fact that during the last two months of his life his health was failing, and during that time he was confined to his room the larger part of the time. He was not able to be moved. He would not let me move him. He could not be moved. His side hurt him so bad and it was so painful that he would not let me move him. It is not a fact that the last month of his illness that the room in which he was left was very dirty. I kept it just as clean as I could under the circumstances. * * * The evening before Grandpa [meaning Mr. Moore] died, Mr.

Ryan [appellant] came and taken him away when I asked him not to. I told him, I said, 'Don't take Grandpa away.' I said, 'He has been with me so long.' I said, 'I would rather he would be here, and while I am not able to wait on him, but I will do my best; I have always done so, and I will continue to do so as long as he lives.' "

R. L. Lofton testified also to the care taken of the deceased during the time they occupied the house jointly.

For the reasons hereinabove given we conclude that appellant's assignments attacking the action of the court in rendering judgment upon the answer to the question submitted to the jury in this cause, and also to the action of the court in refusing to give plaintiff's peremptory instruction, should be overruled. For the reasons shown and under the authorities cited, we conclude that it was immaterial whether M. P. Moore made the gift or grant of the property to Mrs. Lofton take effect at the time she entered into possession thereof, or whether he agreed to give it to her; the gift to take effect at his death. In either event, the consideration, to wit, the care and support of the deceased during his lifetime, was fulfilled by defendants, and plaintiff and his grantor, Rev. Lynch, who were shown to be purchasers with notice and without valuable consideration, are in no position to complain of the enforcement of the equitable rights vested in defendants. While we have not attempted to discuss each assignment presented by appellant, we have carefully examined the same, and have concluded that all should be overruled, and the judgment of the trial court in all things affirmed; and it is so ordered.

Affirmed.

### On Motion for Rehearing.

Appellant in his motion cites us to a number of Texas decisions, many of them by our Supreme Court, which he urgently insists sustain his contention that, in order to take a parol gift or parol sale out of the statute of frauds (article 3965, § 4, Vernon's Sayles' Texas Civil Statutes), possession alone, with payment, in case of a sale, of purchase price, in part or in whole, by the vendee, will not suffice, but there must also be shown valuable improvements made by the latter with the knowledge and consent of the former. Hence it is urged that we were in error in sustaining the conveyance in this case, since we found that no such improvements had been made as would of themselves take the conveyance out of the operation of the statute.

On reconsideration we have carefully examined, not only every Texas authority cited by appellant, but also many others, and have concluded that at least some of the Supreme Court decisions fail to support our heretofore expressed views. While in many, if not most, of the states having the same or similar statutory adoption of the English statute of frauds, enacted in 1676 (29 Car. LI, c. 3,

§ 1), courts of equity have been very liberal in construing such statutes and in giving relief, yet our own courts have seemingly been loath to depart from the somewhat rigorous terms of the statute. This conservative sentiment was voiced in the opinions of Chief Justice Hemphill and Associate Justice Lipscomb in one of the leading cases on this question, Garner v. Stubblefield, reported in 5 Tex. 552. Early in our judicial history, however, the Supreme Court of Texas modified the statutory inhibition, by enforcing specific performance of a parol contract to convey land where valuable improvements had been made by the vendee or donee, with the knowledge and consent of the vendor or donor. This departure from the strict rule of the statute is justified upon the ground that to follow the statute enacted to prevent frauds would in such a case induce and encourage the evils sought to be prevented by the statute. While it may be questioned whether in case of the payment of all, or a large part, of the purchase price, especially where the insolvency of the parol vendor is shown, there is not presented a more cogent appeal to the equity powers of the courts than in the case of valuable improvements made, yet the decisions have established the distinction beyond question, and it has become stare decisis. Equity might permit the removal of improvements, where possible, made by the vendee who is denied specific performance, but it could hardly give substantial value to a moneyed judgment recovered against a hopeless bankrupt.

In many cases language has been used indicating that the court did not intend to hold, or wish to be understood as holding, that the making of valuable improvements was the only equitable ground upon which specific performance should be granted. In Wood v. Jones, 35 Tex. 66, and Morris v. Gaines, 82 Tex. 255, 17 S. W. 538, it is stated in so many words that *either* valuable improvements made in good faith by the vendee, with the consent of the vendor, *or* (italics ours) delivery of possession by a vendor, will take the transaction out of the statute. In Neatherly v. Ripley, 21 Tex. 434, it is said that, the purchase money having been paid, possession alone is sufficient to raise an equity to prevent the contract from being treated as a nullity. In Dugan v. Colville, 8 Tex. 126, Justice Lipscomb says:

"I apprehend that the true principle is that, if there has not been such a change of circumstances produced or growing out of the parol contract that it would be difficult to place the vendee in the same position that he was in before making the contract, there would not be a sufficient equity raised to justify a decree for a conveyance of the title. If, however, the vendor, by a parol contract, should permit the vendee to go into the possession and bestow much labor and expense in improving the land, in the confidence that the vendor would make the title in conformity with his parol promise, such circumstances would raise an equity in favor of

the vendee against his vendor, aside from and uncontrolled by the statute of frauds."

But the opinion does not say that the state of facts used as an illustration is the only one that would avoid the statute, and reasonably implies the contrary. In Robinson v. Davenport, 40 Tex. 334, there were shown valuable improvements to sustain the conveyance, but in discussing the questions involved the court says:

"The doctrine that courts of equity will decree specific performance of parol contracts for the sale of lands under certain circumstances against the inhibitions of the statute of frauds requiring the agreement or some memorandum to be in writing has been too long established to be seriously questioned. The inquiry therefore is not whether relief will be granted in any case, but whether the case comes within certain defined rules which have been held to establish exceptions to the statute. The decisions proceed upon the idea that the equities which will be enforced are in aid of the statute which was to prevent fraud, and independent of it."

In Jones v. Carver, 59 Tex. 293, 296, the court uses the following language:

" * * * To entitle the plaintiffs to its specific performance, it is not enough, under the decisions of this court, to show that such a contract was made, and that the greater part, or even all, of the purchase money has been paid. *Some other equitable matter* [italics ours] must be shown to entitle a party to the specific performance of such a contract."

In the case of Altgelt v. Escalera, 51 Tex. Civ. App. 108, 110 S. W. 989, by the Court of Appeals for the Fourth District, a very full discussion of this question is presented, and the writer of the opinion, Justice Fly, uses this language:

"A person claiming real estate under a parol sale or gift obtains no assistance from the law, because it declares such a sale or gift invalid, and in order to enforce such parol agreement he must present proof of possession and the making of valuable improvements of a permanent character, *or other facts* [italics ours] showing that the transaction is a fraud on the purchaser or donee, if not enforced."

There are expressions in other decisions of our Supreme Court and the Courts of Civil Appeals indicating the judicial purpose to limit the exception to the statute to the case of valuable improvements exclusively. For instance, in Woolbridge et al. v. Hancock et al., 70 Tex. 18, 6 S. W. 818, our Supreme Court, speaking through Justice Maltbie, uses the following language:

"But it is necessary to the validity of a parol sale or gift of land in Texas, however the rule may be elsewhere, that possession be delivered and substantial and valuable improvements made, with the consent or knowledge of the vendor, upon the faith of such gift or sale, and that the mere taking possession or making improvements of insignificant value is not sufficient, especially where the value of the rents exceeds that of the improvements."

But the force of this enunciation as a general statement of the law, rather than as an application of the law to the particular facts disclosed in that case, is somewhat impaired by the subsequent language in that opinion, to wit:

"It follows that every case of this class must stand on its special facts, and when it would be

. inequitable and fraudulent, as against the person in possession, and especially when he cannot be restored to his former condition, the vendor or donor will not be permitted to repudiate the contract; but the inclination of courts is against extending the rule dispensing with writings in the transfer of lands beyond its present limit, whatever hardships its enforcement may cause in particular cases; the policy of ever having dispensed with it in any case being doubted."

[3] Though we fully appreciate the importance of the main question involved in this case, yet, in spite of a seeming conflict of authorities, we are still of the opinion that defendant in this case presented proof entitling her to the protection of the beneficent equitable power residing in the courts. The evidence justifies the conclusion that M. P. Moore, by parol, conveyed the property in question to the defendants in consideration of years of faithful service and tender care and a like service and care to be rendered during his remaining years. Neither party to the contract knew for what length of time such service would continue. Though an old man, it might reasonably be presumed that Moore would live for many years. The Loftons accepted the contract tendered, and undertook to fulfill, and the evidence is sufficient to sustain the conclusion that they did fulfill to its utmost, their part of the contract. It is difficult to measure in dollars and cents the value of such service. The care of the sick, and especially of the aged, is oftentimes exceedingly trying on the patience and nerves of the attendants. As was said in the case of Bryson v. McShane, 48 W. Va. 126, 35 S. E. 848, 49 L. R. A. 527:

"There are some cases that cannot be compensated for by mere money damages. There are some services that are incapable of valuation in money. As to these the law permits individuals to make their own contracts. Old age is naturally repulsive. The hair grows gray, the eyes sunken, the skin wrinkled and drawn, the will feeble, the habits careless, needing all the care and attention of childhood, without its purity, loveliness, and affection as a compensation."

[4, 5] Since plaintiff's suit was in form of trespass to try title, defendants were entitled to give in evidence any lawful defense to the action except the defense of limitation, without any special pleading as a predicate therefor. We are of the opinion that under the evidence plaintiff was entitled in equity to a conveyance on the theory that, while at the time of the purchase of the premises in question the legal title thereto was taken in the name of M. P. Moore, yet in fact the equitable title was at all times thereafter in the defendants. Mrs. Lofton testified that said Moore told her that it was for her that he was buying the place, and other evidence set out in the original opinion sustains the theory that it was the understanding of both Mr. Moore and the defendants that at the time of the conveyance to Moore of the property in question, though the paper title was placed in him, the equitable title was vested in the defendant Mrs. Lofton. A conveyance to Moore of the premises, if he at the time of the conveyance agreed by parol to hold the same for the defendants, would vest the equitable title in them, and such parol agreement would constitute a valid enforceable trust, and would authorize a court of equity to decree the transfer of his interest in the property to the defendants. James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743; Long v. Gray, 13 Tex. Civ. App. 172, 35 S. W. 32; Miller v. Thatcher, 9 Tex. 482, 60 Am. Dec. 172; Houser v. Jordan, 26 Tex. Civ. App. 398, 63 S. W. 1049. In such a case the statute would not apply.

Hence we conclude that appellant's motion for rehearing should be overruled; and it is so ordered.

───

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes