CARL TESKE, APPELLEE, v. MARTHA DITTBERNER ET AL., APPELLANTS.*

FILED DECEMBER 16, 1903. No. 10,901.

1. **Devise:** AGREEMENT TO MAKE. An agreement upon sufficient consideration to devise or bequeath property is valid and enforceable.

2. **Trust.** In such case, equity will impress a trust upon the property, which will follow it into the hands of personal representatives of the promisor or grantees without consideration.

3. **Validity.** The agreement need not be in express terms to make a will; a promise that the promisee shall receive the property, or that it shall be left him at the death of the promisor, is sufficient.

4. **Fraud:** ACTION. If the promisor, after performance by the promisee, conveys the property in fraud of the latter, an immediate cause of action to cancel the conveyance arises.

5. **Performance:** STATUTE OF FRAUDS. Performance of services of such a character that their value can not be estimated by a pecuniary standard, so that the court can not restore the promisee to the situation in which he was when the contract was made, or compensate him in damages, is sufficient to take such an agreement out of the statute of frauds.

6. **Specific Performance.** While, in general, a contract for personal service, where full performance rests upon the will of the contracting party, is not specifically enforceable at suit of either

* See former opinions, 63 Neb. 607; 65 Neb. 167.

party, when such services have been rendered or there has been a substantial performance of his contract on the part of the person agreeing to render them, the reason of the rule ceases, and the contract may be enforced.

7. **Performance by Promisee.** A contract to leave property by will is not ambulatory or revocable, as being testamentary in character, after the promisee has performed his part of the contract.

8. **Homestead:** CONVEYANCE. Where real estate, the legal title to which is in the husband, has been selected and is occupied as a family homestead, it can not be conveyed or incumbered except the instrument conveying or incumbering the same be signed and acknowledged by the wife, as is provided by section 4, chapter 36, Compiled Statutes, entitled "Homesteads."

9. ————: ————. A contract to convey the property embraced in a homestead, which reserves to the homestead claimants the right of use and occupancy until the death of the parties, or until abandonment, is an incumbrance of the title thereto within the meaning and purview of said section 4 of the homestead act.

10. ————: ————: AGREEMENT TO DEVISE: SPECIFIC PERFORMANCE. A parol agreement made by the husband with a third party to devise property embraced within a homestead, like an agreement to convey the reversionary estate, is in conflict with the provisions of the homestead act and is not specifically enforceable, even though substantial performance of the contract by the promisee may have taken place.

11. **Lands Included With Homestead.** When such an agreement includes other land than that included within the homestead, the contract may be specifically enforced except as it affects the homestead property.

APPEAL from the district court for Madison county: JOHN S. ROBINSON, JUDGE. *Reversed.*

*William V. Allen* and *Willis E. Reed*, for appellants.

*Patrick E. McKillip, W. A. McAllister, James G. Reeder* and *Ralph W. Hobart*, contra.

HOLCOMB, J.

In the last opinion filed by Mr. Commissioner AMES, it is shown that the agreement in question is testamentary. We entirely agree, and do not consider it necessary to say more upon that head. The validity of such agreements,

38

when made upon consideration and free from objections that may be urged against all contracts, is beyond question. They have been upheld and enforced from an early period. Note to *Johnson v. Hubbell,* (10 N. J. Eq. 332), 66 Am. Dec. 773, 784; *Howe v. Watson,* 179 Mass. 30; *Bird v. Jacobus,* 113 Ia. 194; *Whiton v. Whiton,* 179 Ill. 32. It is also well established that agreements of this character, in proper cases, may be enforced specifically. Equity will fasten a trust upon the property in the hands of the person who has promised to dispose of it by will, in favor of the promisee, which will follow it into the hands of personal representatives or grantees without consideration. *Howe v. Watson, supra; Smith v. Pierce,* 65 Vt. 200; *Bruce v. Moon,* 57 S. Car. 60; *Duvale v. Duvale,* 54 N. J. Eq. 581, 56 N. J. Eq. 375; *Fogle v. St. Michael Church,* 48 S. Car. 86; *Price v. Price,* 111 Ky. 771; *Burdine v. Burdine,* 98 Va. 515. Nor is it necessary that the agreement be in express terms to make a will. A promise that the promisee shall receive the property, or that it shall be left to him, at the death of the promisor, is .sufficient. *Kofka v. Rosicky,* 41 Neb. 328. Counsel make a vigorous assault upon the latter decision. So far as it relates to cases of imperfect adoption, it chooses between two conflicting lines of authority, each well supported by reason and by adjudications. It ought not to be disturbed simply because some other courts have taken a different view. But, in any case, so far as general agreements to dispose of property by will are concerned, when the letter or intent of the statute as to adoption is not involved, we do not think the soundness of the decision is open to question. These principles established, it follows of necessity that if the person, who has promised to leave his estate or some part of it to another, conveys the property in question to third persons, without consideration, or with notice, the conveyance may be set aside at suit of the promisee who is defrauded thereby. *Kastell v. Hillman,* 53 N. J. Eq. 49. And as clearly shown in the last opinion of Mr. Commissioner AMES, the fact that the promisor is still living is no neces-

sary obstacle to relief against the conveyance. There can be no specific performance till he is dead. But the conveyance whereby he attempts to put compliance out of his power, in fraud of the promisee, creates an immediate right of action. *Synge v. Synge,* 1 Q. B. (Eng.) 1894, 466; *Duvale v. Duvale, supra.*

It is contended further that no sufficient performance is shown to take the case out of the statute of frauds. To the writer, this contention appears well founded and altogether correct, but a majority of the court is disposed to the contrary view and to hold that the contention can not be sustained. It seems to me quite clear that the appellee can be amply compensated for the part of the contract performed by him, assuming its existence, and that there is no occasion for invoking the authority of a court of equity to decree specific performance on the ground that otherwise a fraud would be perpetrated upon him. I think there is far greater danger, by the establishment of a precedent of decreeing specific performance under conditions and facts similar to those disclosed by the record, of making it possible that a fraud may be perpetrated on the aged, and the weak, and those closely connected by ties of blood, than of perhaps slight injustice to one who claims under so uncertain an agreement, which is only partially performed and for which, because of the particular facts and circumstances, ample compensation may be awarded by a money judgment. The authorities cited and relied upon by this court in *Kofka v. Rosicky, supra,* are regarded as warranting the decree prayed for, under the pleadings and the evidence in support thereof. In *Rhodes v. Rhodes,* 3 Sandf. Ch. (N. Y.) *279, the court said:

"Where the services to be rendered were of such a peculiar character that it is impossible to estimate their value * * * by any pecuniary standard, * * * it is out of the power of any court, after the performance of the services, to restore Henry Rhodes (the promisee) to the situation in which he was before the contract was made, or to compensate him in damages. The case is clearly within

the rule which governs courts of equity in carrying parol agreements into effect, where possession has been taken, or moneys laid out in improvements upon the land sold."

This statement was approved in *Van Tine v. Van Tine,* 15 Atl. (N. J. Eq.) 249, and quoted from a note (p. 789) to *Johnson v. Hubbell, supra.* It was repeated in substantially the same form in *Shahan v. Swan,* 48 Ohio St. 25, and *Sutton v. Hayden,* 62 Mo. 101, also approved by this court in the *Kofka* case. It is true several courts have criticized *Rhodes v. Rhodes,* and declined to follow it.

But it is held the question must be regarded as coming within the rule and settled in this state by *Kofka v. Rosicky, supra.* There are numerous other recent decisions which are believed to be in accord therewith. *Winne v. Winne,* 166 N. Y. 263; *Svanburg v. Fosscen,* 75 Minn. 350; *Owens v. McNally,* 113 Cal. 444; *Carmichael v. Carmichael,* 72 Mich. 76. On principle, none of us doubt the soundness of the proposition being discussed. Where the situation is such that the promisee can not be restored to his original position, to permit the promisor to repudiate his agreement under cloak of the statute of frauds, having received a substantial and valuable consideration, would be highly inequitable. Courts of equity, from the very beginning, have striven to maintain the statute in its integrity as a preventive of fraud, while strenuously repressing its use as a means of working frauds. A defendant will not be allowed to shelter his own fraud behind the statute of frauds, nor to use that statute as an instrument of fraud and wrong. When the statute is invoked to sanction a palpable fraud upon one who has performed his agreement and can not be restored to his original position, a court of equity must interpose its authority. *Ryan v. Dox,* 34 N. Y. 307; *Wilber v. Paine,* 1 Ohio, 251; *Hidden v. Jordan,* 21 Cal. 92; *Union Mutual Life Ins. Co. v. White,* 106 Ill. 67; *Whitson v. Smith,* 15 Tex. 33.

It is stated in the last opinion in this case (65 Neb. 167), the plaintiff "has spent many of the best years of his life in the performance in good faith of the testamentary agree-

ment, which the referee has found upon sufficient evidence, to have been entered into between himself and his parents. It does not appear to us that for a repudiation of the agreement by his father he could be adequately compensated in damages." The grantee not only took with notice, but has no equities whatever. Her grantor is amply protected under the terms of the agreement. Repudiation of the agreement, assuming the facts to be as stated, is a fraud upon the plaintiff and will work an irreparable injury. A court of equity ought to interfere in such cases, if possible, and we think it has the power.

But we are told the agreement is one for personal service, and hence is not specifically enforceable. To this there are two answers. In the first place, the contract provides for the care and maintenance of the promisor, or the allowance to him of a stipulated sum in lieu thereof, at his option. This feature of the agreement removes the objectionable features involved in an ordinary contract for support. Second, the agreement for service, as has been hereinbefore held, was substantially performed. If the agreement were newly made and the plaintiff were seeking specific performance, there would be another matter. Here, he has not only performed the services for many years, but has executed other portions of the contract, involving no little expenditure and labor. After performance, an objection of this character comes too late. The rule that contracts for personal service will not be enforced specifically, where full performance rests upon the will of the contracting party, is based on the consideration that the court can not make an efficient decree for specific performance in such cases nor enforce its decree when made. 3 Pomeroy, Equity Jurisprudence (2d ed.), sec. 1405. When the service has been rendered, the reason of the rule fails and the rule ceases to operate. In almost all of the cases above cited personal services were the consideration of the contract.

It is also argued that a testamentary agreement, being testamentary, must needs be ambulatory and revocatory.

Until performance on the part of the promisee, this might be true. But after the promisee has substantially performed all things to be done on his part, the contract to leave the property to him at the death of the promisor ceases to be wholly executory, and revocation would be an intolerable fraud, which a court of equity could not permit. *Bruce v. Moon*, 57 S. Car. 60. With the exception noted, the members of the court and of the commission, hearing oral arguments at the last submission of this cause, are all entirely agreed on the question hereinbefore discussed and decided. What has been said is to be regarded as applying to the doctrine of specific performance of contracts of the nature of the one under consideration as they relate to real estate generally. A very important feature of the case at bar, and one of the chief points of controversy, bears upon the operation of the homestead law and its effect on the parol agreement as pleaded and proved. The subject has demanded no little research, investigation and consideration. It is a fact established by the record that a portion of the real estate involved in the present litigation was, at the time of the making of the alleged agreement, the family homestead of the promisor and his wife, and occupied by them as such. Regarding the homestead, a question of prime importance arises, and that is, whether the agreement comes within the purview and inhibition of section 4 of the homestead act (Compiled Statutes, ch. 36; Annotated Statutes, 6200-6216), which declares that the homestead can not be conveyed or incumbered, unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife. In speaking of the homestead, we wish to be understood as having reference to that part of the real estate in controversy which consists of the dwelling house, in which the promisor, Frederick Teske, and his family, at the time, resided, and its appurtenances and the land on which the same are situated, not exceeding 160 acres in area, nor $2,000 in value. Regarding the proper interpretation and construction of homestead statutes similar in

terms to ours, there is a sharp conflict in the authorities, and it is incumbent on us to adopt and hold to that doctrine which seems consistent with our former decisions, and in harmony with the purposes and object of our homestead act. While the agreement, as has been determined, is testamentary in character, yet its enforcement, by decreeing specific performance, must rest upon equitable rules and principles applied generally to executory contracts for the sale and conveyance of real property. If a person may bind himself by contract to bequeath by will a certain estate in land, then, by the application of the same principle, he may be bound by an executory contract to convey the same estate by deed. In either event the promisee obtains an equitable right or interest which is recognized by courts of equity. The right of the plaintiff to the specific performance of the contract relied upon, rests upon the alleged fact that he has substantially performed his part of the agreement, and that, thereby, an equitable right to and interest in the land in controversy has arisen in his favor; that the enforcement of the agreement upon the part of the promisor, by a court in the exercise of its equitable jurisdiction, is the only method by which he can obtain full and complete satisfaction, and thereby avoid an injury which otherwise would be the result. It is upon these same considerations that the specific performance of contracts generally for the sale of real estate by courts of equity is decreed. It is quite obvious, that if the agreement in the present case may be specifically enforced by resort to a court of equity as to the homestead of the promisor, then the doctrine is established in this jurisdiction that all executory contracts for the sale of real estate, even though a homestead, and in which the wife took no part, which are made subject to the rights and interest of the homestead claimants, may be specifically enforced, and the whole estate and legal title pass, when the homestead right and interest become extinguished by death of the parties or by abandonment. In those states in which this doctrine obtains, the homestead

and reversionary estate are regarded as distinct and separate estates, the latter of which can be dealt with by the owner of the fee by contract, specifically enforceable, and which, it is held, does not violate the law granting and regulating the homestead right.

The argument is advanced, in the present case, that because the owner of the fee may, under the provisions of the homestead act, devise the homestead as he may elect, there exists no good reason for holding to the view that an agreement to will impinges on any of the provisions of the act, and that such agreements should, therefore, be specifically enforced in a proper case by a court of equity. To this it may be said that section 17 of the homestead act simply provides for the course of descent of the homestead after the homestead estate becomes extinguished, by directing its devolution on the heirs at law, subject to the right of disposition by will. In neither event does the course of descent and succession to the realty become fixed and certain till the death of the owner of the fee. As has been seen, the agreement to will loses its ambulatory and revocatory character after substantial performance by the promisee, while the disposition by will, under the provisions of section 17, is subject to revocation or annulment by proper conveyance of the homestead at any time before the death of the holder of the legal title. It can hardly be doubted that an agreement to devise property in a certain way, and on certain conditions, thereby subjecting it to a trust for the benefit of the promisee, is an incumbrance of the title, of the same nature and character as would be an agreement to convey the reversionary estate, reserving to the homestead claimants their homestead rights. Both agreements would rest upon the same general principles of law and equity for their enforcement and validity. To hold to the doctrine that such contracts are valid and enforceable, is to restrict and limit the homestead estate to a mere matter of privilege of occupancy, and this, we are of the opinion, was not in contemplation by the legislature when it enacted the homestead law. Our views in this

respect are strengthened by a reading of section 16, which exempts to the homestead claimant, and protects against legal processes for the time stated, the full value of the homestead, and provides that the disposition of one homestead shall not be held to prevent the selection or purchase of another. Argument seems unnecessary in stating that the homestead, as viewed by the legislature, and which it provided for, was not simply the right to occupy as a place of abode, real estate, not exceeding the quantity and value mentioned, during the life of the homestead claimants. That which was evidently intended is that the physical property, including all and every interest and estate of the homestead claimants, should in no way be conveyed, encumbered or alienated, except by consent of both husband and wife in the manner pointed out by the act. If an agreement to will, which leaves the homestead right unaffected so far as the use and occupancy of the homestead is concerned, is specifically enforceable, then it must follow, by the application of like principles, that an agreement to sell, reserving to the homestead claimants rights of the same character, is valid and may also be enforced, in a proper case, by a court of equity. And, carrying the doctrine to its logical conclusion, a conveyance absolute in form of the entire estate, by the owner of the legal title, would give to the grantee at least an equitable title to the reversionary estate, cognizable by a court of equity in a suitable proceeding when the homestead right becomes extinguished. This is clearly inconsistent with our prior expression as to the true rule which should govern in such cases. A construction of the act leading to the result indicated would deprive the law of much of the wholesome and beneficent aims and purposes intended by the legislature, and leave it a mere shadow of its former self as heretofore construed. If the reversionary estate is encumbered by contract, or conveyed to a third party by the holder of the title without the consent of the other claimant, every one must know that the homestead, that is the property, is materially and substantially diminished in

value and has lost its character for salability. The homestead, as a species of property, has lost all value except for the right and privilege of use and occupancy during lives of the claimants. It could not then be sold and another homestead acquired with the proceeds, as is plainly contemplated may be done by the provisions of section 16. Many authorities of weight, and which are entitled to respectful consideration, are cited by appellee in support of his contention as to the validity of the agreement in so far as it affects the family homestead. Among these is *Ferguson v. Mason*, 60 Wis. 377, which is a leading case, and which, without question, fully supports the doctrine contended for. It is there held that a conveyance of land in fee to take effect at a future time, in which it is stipulated that the grantor shall have the possession and absolute use and control of the land during the life of himself and wife, is valid, and vests the fee in the grantee, although the land was a homestead and the wife did not join. The opinion further holds that the wife has no interest in the homestead except that derived from the power to prevent an alienation thereof, and that at the death of the husband, the wife surviving, she becomes a tenant for life, and at her death, or second marriage, all her homestead rights cease. That decision, it will be observed, although supported by authorities in many other jurisdictions, is not in harmony with the doctrine heretofore expressed by this court on the same subject. In a later case, *Jerdee v. Furbush*, 115 Wis. 277, it is held that a conveyance of the homestead by the husband, without the wife's signature, conveys an equitable right to the legal title, enforceable on the extinguishment of the homestead by the death of the wife or otherwise. In the latter decision, *Ferguson v. Mason, supra*, was, as we read the opinion, reluctantly followed to its logical consequences. It is said, in the course of the opinion, that the court, in the prior case (*Ferguson v. Mason*), followed judicial decisions made under statutes more or less similar to those of Wisconsin, citing a number of such decisions, in preference

to decisions to the contrary under like statutes, citing another line of decisions, in which is included from this state the case of *Clarke v. Koeniy,* 36 Neb. 572. After discussing the subject further, it is observed by the court:

"The law has thus stood for nearly a quarter of a century, and whether the court's construction of the statute was right or wrong it must now be considered the law the same as if the idea involved were literally expressed in the statute. It relates to property. It has become, by the lapse of time, a rule of property, which, by well-settled principles, can only be rightly changed by a legislative enactment."

It is obvious that the court regards the later case as being ruled by *Ferguson v. Mason,* solely by reason of the application of the doctrine of *stare decisis,* and it is followed with apparent hesitation.

On the other side it is held, in *Weitzner v. Thingstad,* 55 Minn. 244, that the contract of the husband, without his wife joining therein, to convey his homestead is void for all purposes, and the husband is not liable in damages for its nonperformance. To the same effect is *Barton v. Drake,* 21 Minn. 299. The supreme court of Alabama, in *Alford v. Lehman, Durr & Co.,* 76 Ala. 526, holds that an attempted conveyance of the homestead, not executed in the manner provided by statute by both husband and wife, is a nullity, neither passing any estate to the grantee nor operating by way of estoppel against the grantors. After quoting from several other decisions of that court, it is observed by the court:

"These decisions have failed to recognize any distinction between the conveyance of the homestead *premises,* and the mere *right* of homestead, which is recognized by some respectable authorities, and in support of which the appellants' counsel have made a most earnest and forcible argument. It is manifest that, if the owner were permitted to encumber the fee or reversion of his homestead, as distinguished from the mere right of undisturbed occupancy—and by a mode of alienation dispensing with the voluntary

assent and signature of the wife—the provision of the constitution under discussion would have little more binding efficacy than a rope of sand, and its policy could be evaded by the husband with fatal facility. All that would be necessary, to effect such alienation, would be for the husband alone to convey or mortgage the premises one day, and abandon them the next; all of which might be done against the most earnest protest of an unwilling wife."

See also *Phillips v. Stauch*, 20 Mich. 369; *Hall v. Loomis*, 63 Mich. 709; *Pipkin v. Williams*, 57 Ark. 242, 38 Am. St. Rep. 241; *Thimes v. Stumpff*, 33 Kan. 53.

In so far as this court has heretofore expressed itself regarding the scope and effect of our homestead statute, its decisions have generally been favorable to a liberal construction of the act, such as would grant the fullest measure of protection to the rights and interests of the homestead claimants. The trend of the decisions has been toward a construction which would render an agreement or contract affecting the homestead, not executed in the manner provided by the act, void for all purposes. Generally it is held, as we view the several utterances on the subject, that a contract relating to the homestead, not signed and acknowledged as required by the act, is a nullity, and incapable of creating any rights, or affording a basis for the granting of relief either legal or equitable in its nature, not only in the homestead estate, but in the property itself embraced in the homestead. It is very true that most of these decisions apply to contracts affecting directly the homestead right and estate, and yet, if the reversionary estate is to be regarded as separable from the homestead estate, and capable of alienation by contract, executory in form or substance, then there is no reason why the doctrine obtaining in Wisconsin, as announced in *Jerdee v. Furbush, supra*, should not be held applicable here, and a conveyance or contract to convey, purporting to convey all and every estate in the land, held to create an equitable right to the legal title, enforceable on the extinguishment of the homestead by the death of the wife

or by abandonment of the homestead. All of our prior utterances, we are satisfied, are inconsistent with this view and with such a construction of the homestead act. The very first utterance of this court on the subject is to the effect that a mortgage on the homestead, signed by the husband alone, is void. It is said: "The law proceeds upon the theory that both husband and wife are entitled to the benefit of the homestead act, and this right can not be waived except by the consent of both." *Bonorden & Ranck v. Kriz,* 13 Neb. 121; *Aultman & Taylor Co. v. Jenkins,* 19 Neb. 209. It is held in *Swift v. Dewey,* 20 Neb. 107, that a mortgage of a tract of land including a homestead, executed by a married man without the concurrence and signature of the wife, is invalid for the purpose of impairing, dismembering, or in any manner affecting such homestead or its appurtenances. To the same effect is *McCreery v. Schaffer,* 26 Neb. 173. *Larson v. Butts,* 22 Neb. 370, is a case wherein it is decided that a contract to convey a homestead, entered into by a wife in her own name, will not be specifically enforced because not signed and acknowledged by both husband and wife. "The title to a homestead," say the court in another case, "can not be devested, or encumbered, by deed, unless such deed be executed and acknowledged by both husband and wife." *Betts v. Sims,* 25 Neb. 166. *Whitlock v. Gosson,* 35 Neb. 829, was a case where a mortgage had been executed on a homestead without the signature of the wife and under circumstances which appeal strongly to a court of equity for the granting of any relief which could be extended by the application of legal or equitable principles, and yet the court said, after quoting the statute, that it was a plain provision against incumbrance of any kind and refused relief altogether. *Clarke v. Koenig, supra,* cited by the supreme court of Wisconsin, was a case regarding the specific performance of a contract for the sale of a homestead and it is said in substance: It is the settled law of this state that the courts will not specifically enforce such contracts not executed in the manner

pointed out by the act, and it is also held that the value of the property would not change the rule. In this case the subject matter of the controversy was a house and lot occupied as a homestead in a city. The doctrine thus announced is clearly inconsistent with and in opposition to that obtaining in Wisconsin and other jurisdictions holding similar views. We may cite also *Violet v. Rose,* 39 Neb. 660; *Prout v. Burke,* 51 Neb. 24, as being in entire harmony with the cases preceding. But the court has gone further and committed itself to the doctrine that such a contract creates no rights either legal or equitable, but is a nullity for all purposes as declared by the statute. In *Meek v. Lange,* 65 Neb. 783, it is held that because of the provisions of section 4 of the homestead act, an executory contract for the sale of the homestead to which the wife is not a party is invalid and its nonperformance does not furnish a basis for recovery of damages for the loss of the bargain. In the opinion it is said:

"The doctrine that the contract was totally void, and would support no action for damages, is certainly supported by text-writers and many decisions." Citing numerous authorities in support of the proposition. Of like effect are *Solt v. Anderson,* 63 Neb. 734; *Buettgenbach v. Gerbig,* 2 Neb. (Unof.) 889.

An examination of these several decisions and considerations of the homestead statute convinces us that the operation of the statute, and especially section 4, nullifies the parol agreement relied on by the appellee in so far as it relates to and affects the homestead property of the promisor and that specific performance of the contract as to such real estate should not be decreed by a court of equity.

No valid objection, it would seem, from the foregoing discussion, can be urged against the authority of a court of equity to compel specific performance as to that part of the real estate involved in the present controversy not embraced within the family homestead. *Swift v. Dewey, supra; Weitzner v. Thingstad, supra.*

An examination of the evidence leads to the conclusion that the findings of fact and the views as expressed with reference thereto in the last opinion, except as the homestead is affected, are sufficiently sustained, and for that reason should be adhered to. The former opinion is modified as herein indicated, and the parole agreement on which the action is based, in so far as it relates to the homestead, is held to be a nullity and of no force and effect. The judgment last entered is set aside and vacated and the cause remanded to the district court for further proceedings in harmony with the views herein expressed.

It has been suggested that since the submission of this cause on rehearing, Frederick Teske, one of the appellants herein, has died. The rule is that where one of the parties dies between the date of submission of the cause in this court and the filing of an opinion therein, judgment may be entered as of the day on which the cause was submitted. *Black v. Shaw,* 20 Cal. 68; *Danforth v. Danforth,* 111 Ill. 236; *Jeffries v. Lamb,* 73 Ind. 202; *Bank of United States v. Weisiger,* 2 Pet. (U. S.) 481; *Bergen v. Wyckoff,* 84 N. Y. 659.

The judgment entered in this court on this rehearing will, therefore, be entered as of the first day of January, 1903.

                                        REVERSED.