DOROTHEA RAU, APPELLEE, v. JULIUS E. RAU, APPELLANT.

FILED JULY 12, 1907. No. 14,901.

Oral testamentary agreements must be established, if at all, by clear and satisfactory evidence, of which the record in this case falls short.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Harry Fisher, J. D. Ware* and *Frank Heller,* for appellant.

*J. H. Van Dusen, contra.*

AMES, C.

This is an action to recover the possession of a lot of ground and appurtenances situated in a suburb of the city of Omaha. The plaintiff is a widow, who at the time of the trial was 76 years of age, and the defendant is her son. She bought the ground and erected a cottage upon it with her own means in 1885, when she was 55 and the defendant

18 years old. It is said that the son furnished $200 toward building the cottage, for which she gave him a due bill which has never been paid. How or from what source he obtained the money is not stated. She occupied the cottage as a home until 1896, her son living with her until 1896. In that year was erected upon the lot, without disturbing the cottage, a brick store building two stories in height and having a basement room or cellar. For the construction of the building she furnished $800 of her own money and $1,600 which she borrowed of a daughter and secured by her own note and a mortgage on the property, making $2,400 in all. There is a dispute and uncertainty whether this was the entire sum expended on the building, or whether it cost some $500 or $1,000 more, which was contributed by the children of the plaintiff, including the defendant. The object for which the building was erected was to enable the defendant, who had attained his majority, to engage in business, which he did, using the lower room and basement for that purpose. The upper room was used as a dwelling for the family, of which the mother continued to be the head and for which she did the household work, and the cottage was rented. The defendant thenceforward occupied the store room and basement free and received the rents from the cottage and paid the taxes on the entire property, which latter item the rents and rental values considerably exceeded. There was no accounting made or demanded or, apparently, expected. During some or all of the time the defendant paid his mother $3 a week for his board, and claims to have contributed some indefinite sums toward the support of the family, of which one of his sisters and a niece were members for a part of the time, by way of furnishing groceries and refunding sums contributed by the other children of the plaintiff toward erecting the building. The situation continued substantially as above narrated until December, 1904, when the defendant married and introduced his wife into the family. Shortly after the latter event dissensions arose, resulting in the removal of the

defendant and his wife to the cottage. This action was begun in May, 1905. The defendant filed a cross-bill, in which he alleges that at the solicitation of his mother he threw up a profitable employment, at wages, and devoted his time, money and attention to the selection of the lot of ground and the erection of the buildings thereon, and generally to assisting in the maintenance of the home, in consequence of and in reliance upon her oral promise that at her death the property should become his own by testamentary devise, and prays that the agreement may be specifically enforced by perpetually enjoining the plaintiff from disturbing his possession or making any disposition of the title inconsistent therewith. The district court, after a trial, rendered a decree dismissing the cross-bill and quieting a title and possession in the plaintiff. The defendant appealed.

The sole evidence of the alleged oral testamentary agreement is the testimony of the defendant, which is flatly contradicted by his mother, but which his counsel contend is corroborated by the testimony of one of his sisters and her husband, that the mother had told them she intended that the defendant should have the property at her death, and intended to make a will to that effect, and that she had in fact executed such a will. The plaintiff does not deny having said something of this purport both to the witnesses and to the defendant, but she says that her statement or promise, if it may be regarded as such, was always coupled with the condition that her son should treat her kindly, and that she should continue to live with him upon the premises until her death. But she says that the condition has been broken and the promise forfeited by abusive and cruel treatment and abandonment of her since it was made. Concerning this latter matter there is, of course, a conflict of testimony which we think it unnecessary to set forth. The conditional feature of the promise is corroborated by at least one of the witnesses and is established by a preponderance of the evidence, and we think that under such circumstances the question whether the treatment

was sufficiently kind and considerate must be left very largely to the feelings and judgment of the promisor. But, even if it be supposed that the condition was not made and that the promise was absolute, which the burden is upon the defendant to prove, the evidence falls far short, in our opinion, of sufficiency to show that it was made at such a time or in such circumstances or with such solemnity as to constitute a binding testamentary agreement. It does not appear to us that the defendant has expended any considerable time, labor, skill or money in behalf of his mother beyond what was demanded from him by the obligations of filial affection, or for which he has not been fully compensated by his use and enjoyment of the home and property. This court has repeatedly held that such agreements must be established, if at all, by clear and satisfactory evidence. *Teske v. Dittberner*, 65 Neb. 167, 70 Neb. 544; *Peterson v. Estate of Bauer*, 76 Neb. 652, 661. In this connection we quite approve and adopt the language of the supreme court of Pennsylvania in the somewhat similar case of *Poorman v. Kilgore*, 26 Pa. St. 365. "We may notice still another principle of law that is applied very beneficially to restrain the exceptions to the statute, and which is of special importance in this case, though its application is not peculiar to cases under this statute. We allude to the law of evidence that grows out of family relations. It is so usual and natural for children to work for their parents, even after they arrive at age, that the law implies no contract in such cases. And it is so natural for parents to help their children by giving them the use of a farm or house, and then to call it theirs, that no gift or sale of the property can be inferred from such circumstances. It is so entirely usual to call certain books, or utensils, or rooms, or houses, by the name of the children who use them, that it is no evidence at all of their title as against their parents, but only a mode of distinguishing the rights which the parents have allotted to the children as against each other, and in subjection to their own paramount right. The very nature of the relation,

therefore, requires the contract between parents and children to be proved by a kind of evidence that is very different from that which may be sufficient between strangers. It must be direct, positive, express, and unambiguous. The terms must be clearly defined, and all the acts necessary for its validity must have special reference to it, and nothing else. * * * The importance of this rule is very apparent; for it requires but a glance over the cases of this class to discover how sad has been the experience of courts in family disputes, growing out of the exceptions which have been allowed to this statute; and how many and how distressing must have been the ruptures of the closest ties of kindred that have been produced and perpetuated by the encouragement thus given to try the experiment of extracting legal obligations out of acts of parental kindness."

We very much doubt if in this case the mother ever made, or intended to make, or was ever, at the time of speaking, understood as making any promise at all. Because of the social as well as blood relationship between the plaintiff and the defendant who, it would seem, was the youngest child and only son, she had formed an intention of bestowing the home upon him at her death. Of this intention she made no secret, and she gave expression to it without hesitation whenever an occasion suggested her doing so. But by reason of a natural and almost inevitable caution she accompanied each such expression with an admonition that her beneficence would be dependent upon the receipt of an equivalent in the way of kind, dutiful and affectionate treatment and regard. To distort such expressions, made in such circumstances, into obligatory testamentary agreements would be to sow the seeds of dissension among near kindred, and to destroy those ties of mutual affection and confidence upon which the happiness of domestic life depends.

We have no doubt that the judgment of the district court is right or that it should be affirmed.

JACKSON and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.