JENNIE E. BROWN, APPELLANT, v. ORLANDO W. WEBSTER, ADMINISTRATOR, ET AL., APPELLEES.

FILED JANUARY 3, 1912.    No. 17,203.

1. **Wills:** RECIPROCAL WILLS: PAROL CONTRACT INTER VIVOS. Where a husband and wife, possessed of separate estates, orally agree that

upon the predecease of either the survivor shall thereupon become the owner of all of the estate, both real and personal, of such decedent, and at the same time, and in pursuance of, and for the expressed purpose of providing a proper method of carrying such agreement into effect, simultaneously execute reciprocal wills, in each of which the other spouse is made sole devisee and legatee, *held* that the oral agreement and the execution of the wills constitute a single transaction, that each is an integral part of one contract, and that such contract cannot be said to rest entirely in parol.

2. ——: ——: ——: Consideration. And, in such a case, the contract of each is a sufficient consideration for the contract of the other.

3. ——: ——: ——: Performance. And the continued reliance by plaintiff upon the contract, by permitting her will executed as a part thereof to remain in the family safe, unchanged and unrevoked, during the entire lifetime of the deceased, constituted full performance by her of the terms of the contract.

4. ——: ——: Revocation. And the wills, executed as a part of such contract, in equity, are not ambulatory, and may not be revoked by either party to such contract so long as the other party continues to perform the contract on his or her part.

5. ——: ——: Parol Contract Inter Vivos: Specific Performance. And where either party to such a contract commits a breach of the same by subsequently executing another will, devising and bequeathing his estate contrary to the terms of such contract, and dies, the survivor, upon proof of a continued performance thereof, in good faith, on his or her part, is entitled to a specific performance of the contract, as against the heirs, devisees, legatees, and executors of the decedent.

6. Pleading. The petition, set out in the opinion, examined, and *held* sufficient.

Appeal from the district court for Lancaster county: Willard E. Stewart, Judge. *Reversed.*

*Field, Ricketts & Ricketts,* for appellant.

*Charles O. Whedon* and *Perry, Lambe & Butler, contra.*

Fawcett, J.

The petition alleges, substantially: That Erastus E. Brown, late of Lancaster county, died August 15, 1908,

possessed of a large amount of real and personal property, which is specifically set out; that he left no heirs of his body and that plaintiff is his widow; that at the time of her marriage to the deceased, in 1866, deceased did not own property exceeding in value the sum of $1,000; that at the time of her marriage, or shortly thereafter, plaintiff received from her mother's estate about $20,000, all of which she turned over to deceased, who managed, controlled and invested the same in his own name as if it were his own money; that nearly all the property purchased with such funds was taken in the name of deceased, and was by him held and transferred as his own; that from time to time, as convenience suggested, an occasional piece of property was taken in the name of plaintiff, the description of which property is set out. As to one of the pieces described, it is alleged that it was sold in 1882 at a profit of $8,000, and the consideration paid to and used by the deceased; that another piece described was also sold and the proceeds paid to and used by deceased; that in January, 1896, plaintiff had standing in her name real property of the reasonable value of $40,000 or $50,000; that at the same time deceased owned property and securities of the value of $50,000 or $60,000; that no accounting was had at any time between plaintiff and deceased of the moneys turned over by her to deceased or of the profits and income arising from the investment thereof; that in January, 1896 (30 years after their marriage), plaintiff and her husband had no children to whom to leave their property; that at the suggestion of the deceased at that time a parol contract was entered into by and between plaintiff and deceased, by the terms of which it was agreed that the survivor should, on the death of the other, become the exclusive owner of all the property, both real and personal, that should then be owned by the one who should first depart this life, "the agreement of one being the consideration for the agreement of the other;" that at the time the deceased suggested that "a proper method to

carry said agreement into effect was for each to execute a will, making the other sole devisee and legatee of all of the property of which he or she should die seized;" that, in pursuance of said agreement, the deceased caused wills to be prepared, one for himself to execute and the other to be executed by plaintiff, which wills were accordingly executed by plaintiff and deceased respectively, "each being executed in consideration of the execution of the other." A photographic copy of each of said wills is attached to the petition as a part thereof, and shows that they were both written by the same person, and, as it appears by comparison with the signature of the deceased, by the deceased himself. The will executed by deceased made plaintiff sole devisee and legatee of all of the property of which he might die seized, and that executed by plaintiff made the deceased sole devisee and legatee of all of the property of which she might die seized. The wording of the two wills is identical, except as to the change of name and sex. Both wills are signed in the presence of the same attesting witnesses. The petition further alleges that after the execution of the wills deceased caused them to be placed in an envelope and delivered to plaintiff for safe keeping; that they were placed by plaintiff in the family safe, where they remained until after the death of deceased; that in good faith and in full reliance on the agreement made and entered into by and between the parties, as above set out, "and the irrevocable character of said agreement, and of the wills executed by the respective parties in pursuance thereto, the plaintiff permitted the deceased to use and deal with the property of the plaintiff, held in her right, as hereinbefore alleged, as if it were his own property. He not only collected, invested and used, in his own name, the income arising from plaintiff's property, but, also, money received as consideration for the sale of her property, as if the same were his own money;" that in April, 1902, deceased sold the farm owned by plaintiff at the time of the agreement referred to, and received on

the contract price, between the date of sale and the time of his death, the sum of $7,750, all of which he kept and used as his own, and had not accounted to plaintiff for any portion thereof; that he used plaintiff's residence, in which had been invested the sum of about $40,000, for many years as the family home without rent or compensation, while the income from his other property, as well as that from plaintiff's property, was invested in his own name, thereby increasing his holdings at the expense of plaintiff's estate; that deceased at no time intimated or notified plaintiff that he wished to modify or revoke the will which he had made in plaintiff's favor in execution of said agreement; that plaintiff in all things fully kept and performed the agreement, made between herself and deceased, as alleged, in consideration for which he agreed to make plaintiff sole devisee and legatee of all property, real and personal, of which he should die seized, if he should first decease; that the will which she executed in due form in January, 1896, making deceased her sole devisee and legatee, is still in full force and effect and unrevoked; that "as the conditions on which plaintiff was to have and receive all of the real and personal property of the said Erastus E. Brown, as her own property, have come to pass, and as the plaintiff has fully kept and performed the agreement on her part, she has become the equitable owner of all the real and personal property of which the deceased died seized. And as the deceased, before his death, committed a breach of said contract, she is in equity entitled to have the same specifically performed by his estate, and those who claim under him;" that in the latter part of July, 1908, it was arranged between plaintiff and deceased to visit friends in the state of New York; that deceased also desired to visit his three brothers in and near Angola, Indiana; that by reason of the illness of a servant in their household, which they felt rendered it unsafe to then leave her alone, it was arranged between them that deceased should proceed to

Indiana and there visit his brothers, that plaintiff should remain at home until it was deemed safe to leave the servant, when she would proceed to northern Michigan and spend a few days with a friend, and then join the deceased at Angola, from whence they would proceed together to New York; that, in pursuance of said arrangement, deceased left home for Indiana on July 26, 1908; that plaintiff remained at home until 'August 2, 1908, when she proceeded to northern Michigan, where she remained until August 10, when she proceeded to Angola, reaching there on the evening of August 11; that on her arrival she found deceased dangerously ill from urinary trouble, with which he had been suffering for three or four days, but of which she had no notice until her arrival; that he survived until August 15, when he passed away; that on the afternoon of August 11, 1908, and before plaintiff reached the bedside of deceased, deceased executed another and different will from that made in pursuance of the agreement made with plaintiff, and by which latter will he gave plaintiff an interest for life in certain property, and gave all the rest and residue of his estate to the defendants Frank M. and Clinton M. Brown, sons of the deceased's brother, Ezekiel, and Charles W. Brown, Homer H. Brown and Laura E. Talmage, children of Warren Brown, another brother of deceased, except a small legacy of $1,500 to Augusta Kreitlow, a long-time servant in the house of plaintiff and deceased; that on January 26, 1911, the will of August 11, 1908, was approved and allowed in the county court of Lancaster county, Nebraska, as the last will and testament of the deceased; that no appeal has been taken from the order probating said will. A true copy of the will is attached to the petition. That by reason of the premises the defendants Brown and defendant Talmage have become vested with a legal title to all the real estate belonging to the estate of the deceased, and the right to receive on final distribution of said estate all of the personal property or its proceeds belonging to said estate,

subject only to the rights of plaintiff as widow in the estate of the deceased; that from the time deceased arrived in Indiana the defendant Talmage became his daily companion, went with him from the residence of one brother to that of another, and continued to be his constant and daily companion from the time of his arrival until plaintiff reached his bedside on the evening of August 11; that at some time prior to making his will deceased gave to defendant Talmage $3,000 in gas bonds which he had taken with him from Lincoln, and also gave to his brother William M. Brown a note and mortgage owned by deceased of $1,500, to be held by him for the use and benefit of the defendants Frank M., Charles W. and Homer H. Brown; that after plaintiff's arrival at the bedside of deceased he was more or less lucid mentally, yet neither he nor any other person notified or intimated to plaintiff that deceased had made and executed the will of August 11, or that he had given to defendants the securities above referred to, until after the demise of the deceased; that plaintiff declined to act as executrix of the will of August 11, and defendant Webster has been appointed administrator with the will annexed; that as such administrator defendant Webster is now in possession of the real estate belonging to said estate, and is collecting the rents and income therefrom; that he is also in possession of all of the personal assets belonging to said estate; that all of the debts of said estate, except a small claim of $25, which is still pending, have been paid, and all claims against said estate have been barred by limitations by order of the county court; that the instrument approved and allowed as the last will and testament of the deceased operated as a breach of his agreement with plaintiff; that no consideration passed from either of the defendants to the deceased for the provisions made in their behalf in said last will and testament, and that no consideration passed from defendants Talmage, Frank M., Charles W. and Homer H. Brown for the securities given to them, nor was the

deceased in any way legally or morally obligated to provide for any of said defendants by will or otherwise; that the provisions so made were entirely voluntary and without consideration; that plaintiff had duly renounced the provisions made for her in the instrument probated as the last will and testament of the deceased, and claimed such share in said estate as was given her by law; that the provision made for Augusta Kreitlow, in the will of deceased, met with the approval of plaintiff, and shortly after the death of deceased plaintiff paid to Augusta the sum of $1,500, the amount of the legacy in her behalf, and took from her an assignment thereof. Plaintiff prays that defendant Webster, as administrator, be restrained from parting with the possession of the whole or any portion of the real estate belonging to said estate and from making any distribution of the personal assets thereof, and that defendants Brown and defendant Talmage may each be enjoined from taking or attempting to take possession of any part of the real estate of deceased and from taking any order for the distribution of the personal assets of said estate, pending the final determination of this suit; that plaintiff be decreed specific performance of the agreement entered into between herself and the deceased, whereby she was to become possessed of the legal title to all the real and personal property of which deceased should die seized; that her title to the several pieces of real estate described and to all the personal assets of said estate be quieted and settled in the plaintiff, as against the several defendants and each of them; that defendants and each of them be foreclosed and barred from all right, title, interest or demand in and to any part or portion of the real and personal property belonging to the estate of said deceased; that defendant Webster, as administrator with the will annexed, and his successors in office may be ordered and adjudged to turn over and account to plaintiff on final settlement of said estate for all the personal property and personal assets belonging to said

estate, which have come into his hands as such adminis-
trator, and which have not been consumed in the settle-
ment of said estate; and "for such other, further and
different relief as may be necessary to fully vest in the
plaintiff full and complete title to all of the estate, both
real and personal, of the late Erastus E. Brown, or that
may be necessary to forever bar the several defendants
of all right, title, interest, claim, or demand in and to
any portion thereof."

To the above petition the defendants, other than de-
fendant Webster, demurred upon two grounds: "First.
That the court has no jurisdiction of the subject matter
in this action. Second. That the petition does not state
facts sufficient to constitute a cause of action in favor
of the plaintiff and against these demurring defend-
ants." The first ground of demurrer was overruled and
the second sustained, and, plaintiff electing to stand
upon her petition, the suit was dismissed at her cost.
From the judgment so entered, plaintiff appeals.

The objections to the petition urged by demurrants
are, substantially: That the contract between plaintiff
and deceased, that the survivor should become the owner
of all of the estate, real and personal, of the deceased
spouse, rests entirely in parol, and, as it affects the title
to real estate, is void under the statute of frauds; that
such contract was not aided by the execution of the re-
ciprocal wills; that the oral contract and the wills are
alike without consideration; that the will of the deceased
was ambulatory in its character and revokable at his
pleasure, and that the execution of the wills did not con-
stitute part performance. These points are so inter-
woven that we will consider them together.

The fact that a contract, of the nature of the oral
agreement alleged, would rest in parol would not neces-
sarily render the same void. Section 3 of the statute of
frauds (Comp. St. 1911, ch. 32), relied upon by defend-
ants, is qualified by the exceptions noted in sections 4
and 6 of the statute. Section 4 provides: "The prece-

ding section shall not be construed to affect in any manner the power of a testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law." Section 6 provides: "Nothing in this chapter contained shall be construed to abridge the powers of the court of chancery to compel the specific performance of agreements in cases of part performance." It will be seen by these two sections: First. That section 3 cannot be construed to affect in any manner the power of the deceased in the disposition of his real estate by a last will and testament, as was done by the will of January, 1896; and hence, even if it were to be conceded that the agreement by the deceased that, if he predeceased his wife, she should become the owner of all of his real estate, and the will executed by him to that effect were separate agreements, the execution of the will, if executed "in pursuance to said agreement," as alleged, would bring the case within the scope of section 4. Second. Under the provisions of section 6, if there was a part performance by plaintiff of the agreement on her part, then under the well-settled rule in this state section 3 of the statute of frauds would not apply. In this case we think there was not only part performance by the plaintiff, but that the performance by her of her part of the agreement was a complete performance. She at once executed the will provided for in her agreement with her husband, and never receded from it, but at all times, during the period of more than 12 years which elapsed before the death of her husband, acted upon it, and thereby continually affirmed it. This constituted not only performance by her, but a good and sufficient consideration for the contract. The deceased himself acted upon the contract, completed by the execution of the wills, and continued performance thereof from the time of its execution in January, 1896, until the 11th day of August, 1908—four days prior to his death. This action on his part shows that, during every day of that

period of more than 12 years, he was in effect asserting and relying upon the contract which he had entered into with the plaintiff. This constituted a sufficient consideration, and performance during that period, of the contract on his part, and, had the condition of the parties been reversed and plaintiff had died first, the deceased could and doubtless would have asserted his rights under the contract, as evidenced by plaintiff's will. It is unfortunate that he, in the absence of his wife, while in the hands of his collateral heirs, and in the face of a speedy demise, should have committed a breach of the contract which he himself had induced his wife to enter into with him. We are unable to consent to the theory that the agreement between the plaintiff and deceased, as to what should become of the estate of the one who should die first, and the execution of the wills were separate transactions. The so-called oral contract and the execution of the wills were made, entered into and executed at the same time. The allegations of the petition are that in January, 1896, "at the suggestion of the deceased" a parol contract was entered into by and between the deceased and plaintiff in the manner above set out, and that "the deceased at the time suggested a proper method to carry said agreement into effect was for each to execute a will, making the other sole devisee and legatee of all of the property of which he or she should die seized. He, therefore, in pursuance to said agreement, caused wills to be prepared and drawn, one for himself to execute, and one for the plaintiff to execute, which wills were accordingly executed," etc. It is a fact well known to the members of this court and admitted in the briefs of both sides that the deceased was an able lawyer of many years' experience. He desired that this contract be made. They had been married for 30 years, and had no children. They had no debts or any one dependent upon their bounty. The years had been passing, and he, realizing that death might at any time remove one or the other, with the care and forethought

characteristic of the man, desired to provide against such contingency. He therefore suggested this plan of disposing of their property. It was agreed to by his wife. His knowledge as a lawyer was such that he realized the importance of reducing the terms of this agreement to writing. He therefore suggested the making of reciprocal wills as the "proper method to carry said agreement into effect." This also was assented to by the plaintiff, and he, with his own hand, drew the wills and had them simultaneously executed in full compliance with the laws of this state. It would be a travesty upon justice to say that everything that was said and done on that occasion did not constitute a single transaction. It is not a question, therefore, of whether or not the execution of the wills aided an oral contract; the question is, were the wills an integral and important part of the contract? We hold that they were, and that from the moment the wills were executed the contract no longer rested entirely in parol. We also think it would be doing violence to every rule of equity to hold that the contract of each, of which the will was a part, was not a good consideration for the contract of the other. We think the consideration of each was both a good and valuable consideration; but, even if it were to be held that it did not constitute a valuable consideration, in the sense that no money was paid or property delivered or personal services performed by the one to or for the other, the contract would still be enforceable for the reason that it was supported by a good consideration. Conceding that a contract by A to make a will in favor of B, that upon A's death he would leave all of his property to B, could not be enforced by B, as against the creditors of A, or as against those having a superior equity to B, yet, if there are no creditors and no one possessing superior equities to B, then a good consideration would be sufficient to entitle B to enforce the contract after A's death. *Parsell v. Stryker,* 41 N. Y. 480, 485; Underhill, Law of Wills, sec. 285.

That a contract to devise real estate, where there has been performance by the promisee, is good in this state is settled in this court by *Kofka v. Rosicky*, 41 Neb. 328; *Teske v. Dittberncr*, 65 Neb. 167, 70 Neb. 544; *Peterson v. Estate of Bauer*, 76 Neb. 652; *Peterson v. Bauer*, 83 Neb. 405; *Pemberton v. Heirs of Pemberton*, 76 Neb. 669; *Harrison v. Harrison*, 80 Neb. 103; *Cobb v. Macfarland*, 87 Neb. 408; *Johnson v. Riseberg, ante*, p. 217. That the execution of the wills satisfied the statute of frauds, see *Brinker v. Brinker*, 7 Pa. St. 53; *Shroyer v. Smith*, 204 Pa. St. 310; *Keith v. Miller*, 174 Ill. 64; *Bruce · v. Moon*, 57 S. Car. 60, 35 S. E. 415. That the will of deceased was not, in equity, ambulatory or revokable, see *Teske v. Dittberner*, 70 Neb. 544, where, in the seventh paragraph of the syllabus, we held: "A contract to leave property by will is not ambulatory or revocable, as being testamentary in character, after the promisee has performed his part of the contract." See, also, *Bolman v. Overall*, 80 Ala. 451; *Johnson v. Hubbell*, 2 Stock. Ch. (N. J.) 332; and *Rivers v. Executors of Rivers*, 3 Desaus. Eq. (S. Car.) 190, where it is said: "By this agreement (to make a will of a particular tenor) he has renounced that absolute power of disposing of his estate at his pleasure, or even at his caprice, with which the law had clothed him; and I cannot doubt that he could bind himself to do so. * * * A man may renounce every power, benefit, or right, which the laws give him, and he will be bound by his agreement to do so, provided the agreement be entered into fairly, without surprise, imposition, or fraud, and that it be reasonable and moral. * * * It appears to me that to make a will in a particular way, on proper considerations, is as much a subject of contract as any other; and he who makes a contract on this subject is as much bound thereby as he would be by any agreement on any other subject." See, also, *Bruce v. Moon*, 57 S. Car. 60, 71; *Parsell v. Stryker*, 41 N. Y. 480, 486, 487. The contention that plaintiff parted with noth-

ing, that the manner in which she permitted her hus-band to manage and control her estate and take title to property in his own name and hold the same and the proceeds from sales thereof, after the execution of the contract, was not different from the manner in which she had permitted him to handle her property prior to its execution, does not impress us as being of any force. The fact is admitted that, at all times after the execution of the contract, she in good faith relied upon it by per-mitting her will to remain as originally executed, with-out any attempt at modification or revocation. If, dur-ing the four days that intervened after the deceased had broken his contract, and while plaintiff was watching by his bedside, she had been stricken with paralysis and suddenly died, the deceased would, by the terms of the contract, have immediately become vested with the owner-ship of all of her estate, both real and personal, and that estate would have gone, under his will of August 11, to those of his blood who appear as defendants in this case; and, if the heirs of the blood of plaintiff had at-tempted to assert any claim to her estate, these heirs of the blood and devisees and legatees of the deceased would be here in the role of plaintiffs, seeking a specific performance of her contract. The record before us shows that when the plaintiff and deceased were married he was worth not to exceed $1,000; that she then had, or very soon thereafter inherited, $20,000, which she turned over to her husband and which he subsequently used as his own in the manner set out in the petition. This was the nucleus of his fortune. Without this start in life, who can say that the deceased would not have suffered the fate of many a good lawyer, and have died without leaving sufficient estate to fight over. Plaintiff not only furnished this start, but she permitted him to use it and its accumulations and the income therefrom, as if it were his own. For the last 12 years or more of their lives she did it in reliance upon this contract. The de-ceased proved to be a successful business man. She

trusted him in business, and trusted him in the arrangement of all of the details of their contract and in the preparation of the wills in consummation thereof. She trusted him until the moment of his death; and, if the allegations in the petition are established upon the trial, she should now receive the reward of that faith and trust which extended over a period of more than 40 years. This is not an attempt on the part of the court or of the plaintiff to make a will for the deceased. It is simply a case of holding him to the terms of a will which he himself voluntarily and freely made as a part of a contract which he induced his wife to enter into with him, and which she honestly and in good faith fully performed on her part.

Several minor questions discussed in the briefs are not thought to be material at this time and will not be considered.

The judgment of the district court in sustaining the demurrer of defendants is clearly wrong, and it is reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.

ROOT, J.

I concur in the majority opinion, in so far as it reverses the judgment of the district court and remands the cause for further proceedings, but I do not concur in the further direction, nor in all that is said in the opinion.

The opinion assumes that there is no defense to the petition, and the district court cannot upon a second hearing follow the opinion and at the same time enter a decree for the defendants, notwithstanding a perfect defense may have been pleaded and proved.

I do not agree to the statement that mutual wills executed in conformity to a preceding oral contract constitute, with the contract, an integral part of one transaction, nor that the respective testators are powerless

to revoke their wills. The wills may furnish written evidence to take the oral contract without the statute of frauds, and if either testator subsequently, in violation of his contract, revokes his will or devises to another the property described in the oral contract, the beneficiaries whose rights are last in point of time will hold the property as trustees for the benefit of the senior devisee.

Furthermore, a decree of specific performance, within the limits of legal discretion, may be granted or withheld according to the circumstances of the case. In the case at bar neither will refers to any contract, nor can it be ascertained from an inspection of them that they were executed in conformity to an antecedent agreement. If evidence competent to establish that essential link in the plaintiff's title be not produced upon a trial, she should not prevail. If that evidence be produced, still there may be proof of such fraud, mistake, unfairness, hardship, rescission, or of changed conditions, as will justify a judgment for the defendants.

For these reasons, I go no further than to say that the petition states facts sufficient to constitute a cause of action in the plaintiff's favor, and the district court erred in sustaining the demurrer.