JEANETTE JESSOP ET AL., APPELLANTS, V. AUGUSTA C.
BROWN ET AL., APPELLEES.

FILED JUNE 29, 1920. No. 20824.

1. **Wills: MUTUAL WILLS: TRUSTS.** An agreement between a brother
and sister for the execution of mutual wills, which in specific terms
purports to bind the survivor to bequeath the property received
under the will to blood relations, but does not clearly and reason-
ably establish a similar obligation as to the survivor's individual
property, will not be held to create a trust except as to the prop-
erty which the survivor has taken under the will.

2. ———: ———: ———: SATISFACTION OF TRUST. Property was
bequeathed under an agreement to dispose of it to the blood re-
lations of the parties. The taker, during his lifetime, paid to or
for the benefit of such relations an amount equal to the property
received. *Held*, such payment constituted a satisfaction of the
trust.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. *Affirmed.*

*Weaver & Giller,* for appellants.

*Fawcett, Mockett & Walford,* and *Lysle I. Abbott,*
contra.

MORRISSEY, C. J.

Plaintiffs brought this suit to establish a trust for their
benefit in property conveyed by deed, or devised under
the will of Edward J. Brown, deceased, to his wife,
Augusta C. Brown. There was judgment for defend-
ants, and plaintiffs have appealed.

Mrs. Jeanette Benson conducted a dry-goods store in
Omaha, from 1887 until her death in 1905. During these
years, there lived with her, David Benson, her husband,
her widowed sister, Mrs. Jessop, and Mrs. Jessop's
children. In Quincy, Illinois, lived Edward J. Brown,
a bachelor brother of Mrs. Benson and Mrs. Jessop.
Brown loaned money to Mrs. Benson for use in her
dry-goods business and took her promissory notes as

evidence thereof. Mrs. Jessop acted as housekeeper, while the money to maintain the house and family was supplied from the mercantile business of Mrs. Benson.

It is alleged by plaintiffs that in 1903 Mrs. Benson and her brother, Edward J. Brown, entered into a contract for mutual wills, whereby Mrs. Benson was to name Brown as legatee in her will, subject to certain provisions made for her husband, and the brother was to name Mrs. Benson as legatee under his will; it being understood that the survivor was to distribute the property in such amounts and proportions as the survivor thought best among their blood relations. It is sufficiently alleged and shown that plaintiffs are the children and grandchild of Mrs. Jessop, and are the blood relations who would inherit the property if the trust relationship were established.

Mrs. Benson and Mr. Brown each executed a will as agreed, and, in March, 1905, Mrs. Benson died. The will already mentioned was duly admitted to probate, and Mr. Brown took charge of all of the property belonging to Mrs. Benson, aggregating some $50,000. Among other claims presented, allowed, and paid, were the promissory notes executed by Mrs. Benson and payable to Mr. Brown, aggregating with interest, $32,000. No dispute or controversy arose between any of the parties until after the distribution of the assets of Mrs. Benson's estate. Subsequently, family discord arose: Mr. Brown left the home of his sister, Mrs. Jessop, where he had established a residence immediately after the death of his sister, Mrs. Benson, and on December 4, 1909, he married defendant, Augusta C. Brown. He was then about 70 years of age. October 19, 1911, probably with a view of adjusting all difficulties between himself and his kin, he entered into a contract whereby he conveyed valuable property to certain of them, and they executed what, no doubt, he regarded as a release of any claim they might have upon his property. Thereafter he conveyed certain real estate to his wife and

executed a will making her the sole devisee. He died in March, 1916.

It is the contention that, by the agreement entered into between Mrs. Benson and Mr. Brown, a trust for the benefit of plaintiffs was created in all of the property of which either party might die seised, except only the provision made in the will of Mrs. Benson for the benefit of her husband, about which there is no controversy. The terms of this agreement, so far as it is shown, must be gathered mainly from two letters written by Mr. Brown to his sister, Mrs. Benson, taken in connection with the subsequent execution of wills by the parties. The first letter is dated Quincy, Illinois, January 21, 1903, and reads as follows:

"Dear Net: I arrived home this a. m. on time and all right. Last night I went to bed early and I think have thought out a way to fix that matter we were discussing. Now, in no event we do not want those notes to become public if we can well avoid it. So here is my suggestion. I will substitute your name in the place of Jennie's in my will so far as the notes are concerned. And you substitute my name in the place of Jennie's in your will. I think we are both of the same mind as to where we eventually want it to go. Now, I am willing to let the survivor dispose of it in such amounts and proportions as the survivor may think best to our blood relation. That part relative to Dave need not be changed at all. Now, if this idea strikes you favorably I will have a couple new wills drawn up and send them to you, and if you approve of them you can sign one and I will sign the other.

"If you fall heir to the notes, you can immediately destroy them. It on the other hand I become the heir I would hold the notes to offset any possible contest of the will that might possibly arise.

"I certainly would dispose of all that you left me, as I think you would desire. And I am sure that you would

do the same with what you might be heir from me. Think this over and let me know how it strikes you.

"Your brother, Ed. J. Brown."

The second letter is dated Quincy, Illinois, January 27, 1903, and is as follows:

"I inclose you my will duly signed for your reading. Also one for you to sign, made as per my letter to you on the subject. Of course if either one of us go first then it would be the immediate duty of the survivor to make another will disposing of the property as the deceased one would desire as we each understand it.

"It would be well to take this up to Judge Fawcett and let him look them over, and then you sign and have your will properly witnessed.

"I have had them made as short and to the point as it seems to me it could have been done, at the same time covering all necessary points. I will retain your old will until you return these to me and will at once destroy my old one, and will return your old one for you to destroy.

"Affectionately, Ed."

May it be said from a reading of these letters that it was the intention of the parties to this correspondence to create a trust for the benefit of their blood relations, not only in the property which one might inherit from the other, but in the property which each then and there held separately? In support of their contention plaintiffs cite the case of *Brown v. Webster*, 90 Neb. 591, 37 L. R. A. n. s. 1196, where this court enforced an agreement entered into between husband and wife for mutual wills. In that case the contract was for the benefit of the parties thereto, and it expressly covered the property owned by each. In the instant case neither party was legally bound for the support of the sister, Mrs. Jessop, or the members of her family. It is evident that a strong bond of affection existed, and there can be little doubt that Mrs. Benson, a childless wife of advanced years, and her bachelor brother, intended that

the property should ultimately descend to the children of the sister.

But for either to intend to surrender full power and control over individual property, acquired by years of toil, is contrary to human experience. It is quite reasonable to assume that one of these parties might be willing to take the property of the other, hold it in the nature of a trust, and at death transfer it to the blood relations; but it is unreasonable to assume that either, while still actively engaged in business, intended to surrender control over his own property. In this connection, it may be noted that in the last paragraph of the first letter Mr. Brown stated: "I certainly would dispose of all that you left me, as I think you would desire. And I am sure that you would do the same with what you might be heir from me." This suggests the obligation to pass on the amount inherited to the blood relations, but it does not constitute an agreement to thus deal with the property accumulated and owned by the individual.

While the decree of the district court finds in favor of defendant on a number of grounds, including the contract entered into between the parties on October 19, 1911, to which we have previously referred, we do not deem it necessary to a disposition of the case to set out that contract, or to make it the basis of our judgment. We are convinced from the record that no trust was created for the benefit of plaintiffs in any of the property owned or held by Mr. Brown, other than the property he took under the will of his sister, Mrs. Benson.

This leads us to a consideration of the property thus acquired. It is claimed by plaintiffs that the promissory notes presented by Edward J. Brown and allowed against the estate of Mrs. Benson did not represent a *bona fide* indebtedness. It is said by defendant that the genuineness of this claim cannot be determined in this collateral proceeding, but it is not necessary to pass upon that question. The evidence preponderates in favor of defendant's claim that the notes constituted a

valid claim against Mrs. Benson's estate for money which her brother had actually loaned for use in her business. The district court found, and the record abundantly supports the finding, that there came into the hands of Edward J. Brown, as legatee under the will of Mrs. Benson, only the sum of $7,332.25 and a diamond breastpin, the value of which is not shown. He paid to, or for the benefit of, the sister, Mary A. Jessop, and her children, an amount in excess of $13,000, and also conveyed to certain of them real estate of the value of several thousand dollars. He has fully accounted for all the property he received under the will of Mrs. Benson.

Plaintiff's petition is without equity, and the judgment of the district court is

AFFIRMED.

LETTON, ROSE and DAY, JJ., not sitting.